```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                    JACKSON DIVISION
```

TIMOTHY EALY                                          PLAINTIFF

VS.                        CIVIL ACTION NO. 3:21-cv-215-TSL-MTP

SOUTH LAND TRANSPORTATION, INC.                       DEFENDANT

VS.

RICHARD WILKERSON, SR., ET AL.          THIRD-PARTY DEFENDANTS

MEMORANDUM OPINION AND ORDER

Two motions are pending before the court for decision: (1) the motion of defendant South Land Transportation, Inc. (South Land) for new trial, to amend the judgment or for remittitur pursuant to Rule 59 of the Federal Rules of Civil Procedure, and (2) the motion of plaintiff, Timothy Ealy, pursuant to Rules 59, 21 and/or 15 to alter or amend judgment to add Richard Wilkerson, Jr. as a defendant bound by the judgment. The motions have been fully briefed and the court, having considered the memoranda of authorities submitted by the parties together with the evidence adduced at trial, concludes that both parties' motions should be denied.

Defendant's Motion for New Trial, to Amend Judgment or for Remittitur

Plaintiff was severely injured in a January 3, 2019 accident in which the tractor-trailer truck he was driving left the roadway, slid down an embankment and flipped; a tree limb

1

entered the cab of the truck, impaling plaintiff in his shoulder and abdomen. Plaintiff filed this lawsuit alleging that at the time of the accident, he was an employee of defendant South Land, which had failed to procure workers' compensation coverage for its employee. Plaintiff demanded a judgment for damages for his injuries against South Land in accordance with Mississippi Code Annotated § 71-3-9. <u>See</u> Miss. Code Ann. § 71-3-9 (providing that "if an employer fails to secure payment of compensation as required by this chapter, an injured employee . . . may elect to claim compensation under this chapter, or to maintain an action at law for damages on account of such injury. . . ."). South Land denied it was plaintiff's employer and disputed the extent of his claimed damages.

Following a two-and-a-half day trial, the jury returned a verdict of $1,500,000 for the plaintiff against South Land. It did this despite plaintiff's counsel suggesting in closing argument that the jury return a verdict of $700,000, to include $200,000 for past medical expenses and lost wages, $250,000 for pain and suffering and 250,000 for emotional distress. The court entered judgment in plaintiff's favor against South Land for $1,500,000 on February 14. By its present motion, South Land requests that the court alter or amend the judgment by reducing it to an amount consistent with what South Land contends is the actual evidence and consistent with state law

2

(including Mississippi's $1,000,000 cap on noneconomic damages, see Miss. Code Ann. § 11-1-60(2)(b) (stating that "in the event the trier of fact finds the defendant liable, they shall not award the plaintiff more than One Million Dollars ($1,000,000.00) for noneconomic damages.")). It requests, in the alternative, that the court grant a new trial on the issue of damages so the jury can be instructed to delineate between economic and noneconomic damages on the verdict form.

As a general rule, "state law governs 'review [of] the size of jury verdicts' in diversity cases." Longoria v. Hunter Express, Ltd., 932 F.3d 360, 364 (5th Cir. 2019) (quoting Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 418, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996)). As set forth in Mississippi Code Annotated § 11-1-55,

> The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence. If such additur or remittitur be not accepted then the court may direct a new trial on damages only. If the additur or remittitur is accepted and the other party perfects a direct appeal, then the party accepting the additur or remittitur shall have the right to cross appeal for the purpose of reversing the action of the court in regard to the additur or remittitur.

3

Miss. Code Ann. § 11-1-55. "'Thus, [a remittitur] may be awarded: (1) if the court finds that the jury was influenced by bias, prejudice, or passion or (2) if the damages were contrary to the overwhelming weight of credible evidence.'" Stockett v. Classic Manor Builders Inc., 226 So. 3d 620, 623 (Miss. Ct. App. 2017) (quoting Rodgers v. Pascagoula Pub. Sch. Dist., 611 So. 2d 942, 944 (Miss. 1992)).

"Evidence of bias, passion, or prejudice on the jury's part is an inference to be drawn from contrasting the amount of a verdict with the amount of damages." Schoppe v. Applied Chemicals Div., Mobley Co., Inc., 418 So. 2d 833, 836 (Miss. 1982) (citing Walton v. Scott, 365 So. 2d 630 (Miss. 1978)). "'Awards fixed by jury determination are not merely advisory and will not under the general rule be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.'" Stockett, 226 So. 3d at 624 (quoting Rodgers, 611 So. 2d at 945). See also Schoppe, 418 So. 2d at 836 (quoting 22 Am. Jur. 2d Damages section 366, p. 473 (1965)) ("'[T]he damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess.'"). On this subject, the Mississippi Supreme Court has observed:

4

> Dealing with the amount of verdicts is one of the most troublesome questions with which the courts have to struggle. There is no exact yardstick, or measurement, by which to test the question. Each case must depend upon its own facts. The test is not what amount the members of the court would have awarded had they been upon the jury, or what they, as an appellate court, think should have been awarded, but whether the verdict is so excessive as to indicate that the jury was animated by passion, prejudice, or corruption.

Classic Coach Inc. v. Johnson, 823 So. 2d 517 (Miss. 2002) (concluding that while the verdict was large, "considering all the circumstances, including the age of the plaintiff, we are not able to say the amount of the verdict was the result of passion, prejudice or corruption.").

The court addresses, as an initial matter, South Land's complaint that it is impossible to determine what the jury intended to award for medical expenses, lost wages or noneconomic damages because the verdict form provided to the jury by the court was not crafted to delineate between economic and noneconomic damages, as South Land intimates would have been advisable in light of Mississippi's statutory damages cap of $1,000,000 on noneconomic damages. South Land asserts that "none of the [trial] participants believed a verdict exceeding $1 million was likely, much less appropriate, since the verdict form would presumably otherwise have been crafted to delineate between economic and noneconomic damages for purpose of Mississippi's statutory damages cap." South Land's apparent

5

suggestion that the court used a general verdict form because it believed a verdict of over $1,000,000 was unlikely or would have been inappropriate is wholly unfounded.  The court used a general verdict form for one reason only:  Neither party requested any other form of verdict.  Plaintiff's requested jury instructions included a general verdict form.  For its part, South Land did not request any particular form of verdict, and when furnished a copy of the general verdict form the court proposed to use, neither party objected.  The fact that South Land itself did not anticipate a verdict exceeding $1,000,000 and therefore did not request a special verdict form is not a basis for relief if the verdict is otherwise sustainable.  And in the court's opinion, it is.

The court's consideration of the amount of the verdict must begin with a recognition that under the law, an award of noneconomic damages may not exceed $1,000,000.  Thus, the first question for the court is whether a verdict of at least $500,000 in economic damages is contrary to the overwhelming weight of credible evidence or suggests the jury was influenced by bias, prejudice or passion. Referencing the closing argument of plaintiff's counsel, South Land asserts that plaintiff "expressly acknowledged there was evidence for [no] more than $200,000 in economic damages ($171,882.74 for medical bills and the balance for lost wages)."  Indeed, in closing argument,

6

plaintiff's counsel specifically acknowledged that plaintiff was only requesting compensation for $171,882.74 in medical expenses for treatment received by plaintiff at the University of Alabama-Birmingham Medical Center in the days immediately following the accident; and he further suggested an award of only $25,000 for past lost wages based on certain payroll records showing that plaintiff earned $400 to $500 per week in the final six to eight weeks of 2018.  The jury, however, was not bound by counsel's view of the evidence and was instead entitled to make its own assessment of the proof.

In this regard, there was evidence in the form of plaintiff's testimony that subsequent to his discharge from UAB Medical Center, plaintiff received medical treatment relating to injuries received in the accident.  However, since there was no evidence of the amount of any medical expenses associated with that treatment, any award of medical expenses for such treatment would be based on speculation or amount to conjecture and could not stand.

As for lost wages, South Land incorrectly asserts in its motion that the only evidence of plaintiff's pre-accident wages were plaintiff's payroll records covering the last six to eight weeks of 2018.  In his trial testimony, Ealy stated that during his employment as a truck driver, he earned from $1,500 to

7

$2,000 per week, after taxes.  Upon being shown the payroll records from the last six to eight weeks of 2018 reflecting earnings of $400 to $500 per week, Ealy acknowledged that there were some weeks when he hauled fewer loads and therefore earned less; but he did not recant or alter his testimony that he usually earned $1,500 to $2,000 a week.  Accepting the payroll records as accurate - and Ealy did not dispute their accuracy - the jury, crediting Ealy's testimony, could have found that he earned up to $92,000 per year in 2018.  In light of plaintiff's further testimony that he was unable to work for a year following the accident, the jury could have found that plaintiff had past lost wages of $92,000 for that year.

Moreover, Ealy indicated in his testimony that because of the injuries he sustained in the accident – physical and mental - he is no longer able to drive a truck.  He stated that he is currently employed as a floor technician at a children's hospital.  Although no evidence was presented as to his wages as a floor technician, the jury, based on common knowledge and/or experience, could easily have deduced that even the best paid floor technicians do not earn wages anywhere near $92,000 a year.  The jury thus could reasonably have found that plaintiff had additional lost wages prior to the date of trial, and that plaintiff, a relatively young person (39 years of age at the time of trial), likely would have a loss of future earnings as

8

well; and past and future wage losses, combined, could well have been found to exceed $322,117,26, thus placing his economic damages at or above $500,000.

Regarding plaintiff's noneconomic damages, South Land argues that the fact that plaintiff's counsel requested (or suggested) only $500,000 for noneconomic damages in his closing argument is proof itself – or rather, supports "a substantial inference" - that plaintiff's noneconomic damages were more in the range of $500,000 and that the jury's verdict was not based on the evidence but was the product of bias and passion.  The court is unpersuaded.  Counsel's argument is not evidence and, as stated, the jury was not bound to accept counsel's view of plaintiff's damages, especially noneconomic damages, which as South Land acknowledges, are subjective.

In its effort to minimize plaintiff's potential noneconomic damages and to show, inferentially, that the jury's verdict reflects bias or passion, South Land notes that plaintiff was hospitalized post-accident for "a bit more than a week" and that plaintiff "did not offer any evidence of problems thereafter rising to the level of additional medical bills or ongoing disability."  In fact, plaintiff sustained a severe, and some would say horrific injury, for which he was hospitalized for nine days, most of which was spent in intensive care, and during

9

which time he underwent two major surgeries.  According to plaintiff's testimony, he was then discharged with open wounds that required regular cleaning and redressing for an extended period, during which time he was essentially immobile.  He further testified that for a year or more following the accident, he experienced recurring infections at the site of his wounds, for which he repeatedly sought and obtained medical treatment, including, ultimately, surgical intervention.  It is true that plaintiff's attorneys did not seek recovery of medical expenses relating to such treatment, and they did not present evidence of any medical bills relating to such additional treatment for his injuries.  Nevertheless, even without expert testimony as to causation, the jury could readily have found that these recurring infections were likely a complication from plaintiff's injuries in the accident since the infections occurred at the wound sites and, in one instance, as related by plaintiff, twigs and stems were expelled from the wound site. Cf. Berry v. Kuhlman Corp., Civil Action No. 3:04CV134TSL-JCS, 2007 WL 951594, at *4 (S.D. Miss. Mar. 27, 2007) (expert proof not needed to prove causation where causation would be fairly obvious to the untrained layman).  And while the jury could not have awarded expenses for medical treatment in the absence of proof of the amount of such expenses, if any, the jury would certainly have been warranted in factoring plaintiff's ongoing

10

difficulties with these recurring infections into an award for physical and mental pain and suffering.

In sum, considering all the circumstances, the court cannot say that a verdict of $1,000,000 for noneconomic damages and $500,000 (or more) in economic damages "is so excessive as to indicate that the jury was animated by passion, prejudice, or corruption." Accordingly, the court will deny South Land's motion for new trial, to amend judgment or for remittitur.

Plaintiff's Motion to Amend Judgment

Ealy has moved to amend judgment to add Richard Wilkerson, Jr., president of South Land, as a defendant bound by the judgment. Plaintiff's motion is based on Mississippi Code Annotated § 71-3-83, which states, in pertinent part, that in the case of a corporate employer that is required to and yet fails "to secure the payment of compensation under this chapter ..., the president, secretary and treasurer thereof shall be severally personally liable, jointly with such corporation, for any compensation or other benefit which may accrue under this chapter in respect to any injury which may occur to any employee of such corporation while it shall so fail to secure the payment of compensation as required by this chapter." South Land opposes the motion, arguing that the Mississippi Legislature, by its use of the term "compensation" in this statute, "has made

clear that personal and several liability should attach only to 'compensation' awards made pursuant to the Act," and that the statute, therefore, does not apply to an action for damages at law. Plaintiff does not dispute that "compensation" refers to compensation awards under the workers' compensation act but contends that a judgment for money damages is an "other benefit" within the meaning of the statute. In the court's opinion, defendant has the better argument.

The Workers' Compensation Act represents a trade-off: "The worker has given up his right to sue his employer in tort for substantial damages in exchange for a certain, albeit more modest, recovery. The employer, on the other hand, has accepted an obligation to afford compensation without reference to fault and has also waived various traditional common law defenses in exchange for protection from a sizable judgment in a personal injury damage suit." Nash v. Damson Oil Corp., 480 So. 2d 1095, 1099 (Miss. 1985) (citing Dunn, Mississippi Workmen's Compensation, § 2 (3d ed. 1982)). Thus, Mississippi Code Annotated § 71-3-7 provides that "[c]ompensation shall be payable for disability or death of an employee from injury or occupational disease arising out of and in the course of employment, without regard to fault as to the cause of the injury or occupational disease"; and § 71-3-9 makes "[t]he liability of an employer to pay compensation ... exclusive and

in place of all other liability of such employer to the employee ... and anyone ... entitled to recover damages at common law or otherwise from such employer on account of such injury or death," subject to the exception that if the employer "fails to secure payment of compensation as required by this chapter," the employee, or his legal representative in case death results from the injury, has the option to either "claim compensation under this chapter, or to maintain an action at law for damages on account of such injury or death."  And, again, under § 71-3-83, the president, secretary and treasurer of a corporate employer that fails "to secure the payment of compensation under this chapter ... shall be severally personally liable ... for any compensation or other benefit which may accrue under this chapter in respect to any injury which may occur" to an employee during a time the employer has failed to secure the payment of compensation.  The Act defines "compensation" to mean "the money allowance payable to an injured worker or his dependents as provided in this chapter, and includes funeral benefits provided therein."  Miss. Code Ann. § 71-3-3(j).  The Act does not define "benefit."  However, § 71-3-3(j) refers to funeral benefits, and § 71-3-7, entitled "payment of compensation by employer," refers to a claimant's "claim for benefits when filing a petition to controvert," and references various types of benefits payable under the Act, including "disability, death and medical

13

benefits." In the court's opinion, it is clear that the reference in § 71-3-83 to "other benefit which may accrue under this chapter" is to benefits payable under the Workers' Compensation Act itself, and not to a judgment for money damages. The right of an employee to pursue and recover a judgment at law for money damages rather than limiting himself to the compensation (including any benefit) payable under the terms of the Act when his employer fails to secure payment of compensation under the Act is a right that accrues to the employee under the terms of the Act. But a judgment for money damages is not a "benefit" that accrues under the Act. That the legislature would impose personal liability against corporate officers for the relatively "modest" compensation benefits due an employee under the terms of the Act and yet not impose such personal liability when an employee chooses to pursue his remedy – a potentially sizeable judgment - outside the Act, is neither surprising nor unfair. It is just another aspect of the trade-off that the Workers' Compensation Act represents. For these reasons, the court will deny the motion to add Richard Wilkerson, Jr. as a defendant to the judgment.

Plaintiff also seeks to amend the judgment to add prejudgment interest. In the court's opinion, such an award is not warranted on what was obviously a claim for unliquidated damages. See Moeller v. Am. Guar. & Liab. Ins. Co., 812 So. 2d

14

953, 958 (Miss. 2002) (quoting City of Gulfport v. Cowan Road & HWY 90, LLC, 352 So. 3d 592, 600 (Miss. 2022) ("'Prejudgment interest may be allowed in cases where the amount due is liquidated when the claim is originally made or when the denial of a claim is frivolous or in bad faith.  No award of prejudgment interest is allowed where the principal amount has not been fixed prior to judgment.  Prejudgment interest is not imposed as a penalty for wrong doing; it is allowed as compensation for the detention of money overdue.'").

Conclusion

    Based on the foregoing, it is ordered that South Land's motion for new trial, to amend judgment or for remittitur is denied, and plaintiff's motion to amend judgment is denied.

    SO ORDERED this 16th day of May, 2023.

                                      /s/ Tom S. Lee
                                      UNITED STATES DISTRICT JUDGE